Jones, Chief Judge,
delivered the opinion of the court:
This case involves an alleged failure to restore plaintiff, who was entitled to the benefits of the Veterans’ Preference Act of 1944, to the position which he held at the time he entered the military service.
In May 1942 a civil service examination was held to establish a civil service register of persons eligible for appointment to positions in the Wellsville, New York, post office. The positions included substitute clerks and substitute carriers. Plaintiff, along with a number of other applicants, passed this examination and was placed as number three on the eligible list.
In the meantime plaintiff accepted employment during the summer of 1942 by an oil refinery in Pennsylvania.
After taking the civil service examination in May 1942 plaintiff talked with the postmaster about the prospects of an appointment and was told by the postmaster that he expected to appoint three substitutes. Plaintiff understood the postmaster to imply that if opportunity presented he would be glad to give plaintiff one of the appointments. Plaintiff was not in Wellsville although his family was there when the results of the examination were announced. The list of eligibles is set out in finding 5.
Soon after plaintiff learned of the results of the examination he resigned his position with the oil refinery and returned to Wellsville in anticipation of receiving one of the appointments.
When plaintiff conferred with the postmaster he was told that one appointment would go to John P. Hollod, who was first on the list, and who had a veteran’s preference; that the second appointment would be given to James N. Gardner, who was second on the list, and that Francis J. Fagan, who was fifth, would receive the third appointment. The man occupying fourth place on the list was offered an appointment but declined it.
In assigning his reasons for not appointing plaintiff, who was third on the list, to one of the positions the postmaster *754 stated that O’Brien had first come to Wellsville in 1941 to work for the local refinery but that his home was understood to be in Bhode Island. He brought his wife and small daughter to live in a rented house in Wellsville, but in July 1942 he left the community and it was reported that he had gone to work in a refinery in another state and that it was not known whether he intended to return to Wellsville; that he had considered these and other facts in connection with the eligibility of the plaintiff.
Plaintiff was upset and angry over his failure to receive one of the appointments. He applied for and received unemployment compensation and engaged in some miscellaneous work, remaining in Wellsville during September, October, and November 1942.
On December 1,1942, plaintiff was employed by the Wells-ville post office as a temporary substitute carrier. This was for the Christmas rush during the month of December*. It was so understood by both plaintiff and the postmaster. The employment was terminated December 31,1942.
The postmaster found plaintiff’s work satisfactory during this period, but also found him “belligerent, opinionated, and unpopular among other employees. * * * prone to argue * * The postmaster regarded him as a troublemaker.
Both Gardner and Hollod entered the military service in the latter part of 1942 and Francis J. Fagan entered the service of the Navy in January 1944. The postmaster on January 20,1944, employed plaintiff as a substitute clerk. It was a war service indefinite appointment. In March plaintiff was ordered to report for preinduction physical examination and on March 17 was certified as physically fit. Since a call to service early in April was anticipated, plaintiff was given leave on March 29,1944. He entered the Navy on April 25, 1944, and remained on active duty until August 20, 1945, when he was honorably discharged. He then held the grade of mailman third class, and was discharged with a service-connected disability rated 30 percent.
In the fall of 1945 plaintiff wrote to the postmaster at Wellsville informing him of his release from the service by honorable discharge and making inquiry concerning the pros *755 pects of further employment by tbe Wellsville postoffice. This letter was not preserved by the Wellsville postmaster and plaintiff kept no copy. The plaintiff fixes the date of the letter as October 19,1945.
In the latter part of 1945 the postmaster wrote to plaintiff in reply to the letter described. This letter is set out in finding 17 and seems to refer primarily to the question of plaintiff’s status as a civil service employee and to evidence the desire on the part of plaintiff to secure a regular appointment. However, some other matters were discussed.
There followed considerable correspondence between plaintiff and the Civil Service Commission as to plaintiff’s status in the classified service. Quotations from these letters are set out in findings 18 to 21, inclusive. The Civil Service Commission indicated in these letters that plaintiff was no longer on the active civil service register.
On August 16,1946, an examination was held for employment in the railway mail service. Plaintiff passed this examination and on December 9,1946, accepted an appointment as temporary railway mail clerk. He was promoted on December 30, 1946, and again on September 1, 1947, when he became a regular railway mail clerk. As of April 24, 1953, he was a grade 5 clerk in the same service.
Plaintiff continued to correspond with the Civil Service Commission as to his rights to have been restored in the fall of 1945 to the position which he had occupied at the time he entered the military service.
On March 15,1947, while plaintiff was employed as a substitute railway mail clerk, he wrote a letter to the United States Civil Service Commission, in replying to which the President of the Commission indicated that plaintiff was entitled to restoration to duty in the position of substitute clerk in the Wellsville, New York, post office if he had applied for such restoration within 90 days of the date of his honorable discharge from the armed services, and had thus met the requirements for restoration.
In this letter of April 21, 1947, from the President of the Civil Service Commission, is the first direct reference in any of the letters that are in evidence to the question of plaintiff’s *756 being restored to bis former position in the Wellsville post office.
The evidence is conflicting as to whether plaintiff applied for such restoration within 90 days from the date of discharge as required by the statute. The postmaster states that the letter which plaintiff wrote him in the fall of 1945 was a personal letter inquiring as to his status and his opportunity for appointment in the regular service, and as to his status on the civil service register, and that as he remembers plaintiff did not make application for restoration, and that he did not understand that plaintiff was making such a request.
Plaintiff testified positively that in this letter of October 19, 1945, he did make application to be so restored. This letter, if written on that date, was within the 90-day period.
While the letters actually in evidence, and the testimony outside that of plaintiff, tend to bear out the postmaster, nevertheless, since these letters were not preserved by the postmaster and are not in evidence, we are inclined to resolve the doubt in favor of plaintiff’s claim that he did so apply.
On October 19, 1945, plaintiff held a retention-preference rating higher than that of Connell McGinnis or R. Dow Stannard.
Connell McGinnis was displaced and was separated from the service on February 16,1946, upon the return of Francis J. Fagan, who held a higher retention-preference rating than plaintiff, and who took the place of McGinnis. Stannard was displaced on March 15, 1946, upon the return of John P. Hollod, who held a higher retention-preference rating than plaintiff.
Had plaintiff been restored to the position which he held at the time he entered the military service he would not have been entitled to hold the place beyond the date March 15, 1946, when he would have been displaced by veterans’ preference employees who held a higher rating than that of the plaintiff.
As stated in the case of Fishgold v. Sullivan Corp., 328 U. S. 275, 286, 287, the Veterans’ Preference Act, while it should be liberally construed, was not intended to require the retention of a veteran when no work was available. At *757 any rate, just before plaintiff was inducted into the military service he held an indefinite appointment. His eligibility under the civil service had expired, hence he was entitled to be restored only for the period when work was available. He was not entitled to be retained in preference to veterans who held a higher preference rating.
The record shows that following October 19,1945, plaintiff drew $20 per week unemployment compensation.
The plaintiff is entitled to recover for the period October 19, 1945, to March 15,1946, at the rate of pay which he was receiving just prior to the date he entered the military service, less the amount of unemployment compensation he received during that period, and less any other amount he may have earned by any work which he performed during that period.
Entry of judgment will be suspended pending a stipulation by the parties showing the amount due plaintiff in accordance with this opinion.
It is so ordered.
Labamoee, Judge; Mabden, Judge; Whitakee, Judge; and LittletoN, Judge, concur.
EINDINGS OP PACT
The court, having considered the evidence, the report of Commissioner W. Ney Evans, and the briefs and argument of counsel, makes findings of fact as follows:
1. At the times material to this action the town of Wells-ville (in Allegany County), New York, had a population of approximately 7,000 persons. Carl N. Marshall was postmaster.[1] The staff of the post office, just prior to June 1941, included the assistant postmaster, five clerks, and six carriers.
2. On June 16, 1941, J ames M. Gardner was employed by the Wellsville post office as a substitute clerk.
On January 1,1942, Bernard J. Shine was employed as a substitute carrier.[2]
On July 1, 1942, Francis J. Fagan was employed as a substitute clerk.
*758 On August 10, 1942, Fagan was again employed, as a substitute carrier.
In each, of these instances the employment was for work as and when needed and was temporary in the sense that no civil service register of persons eligible for probational or permanent appointment to the positions had been established.
3. In February 1942, announcement was made of an examination to be held the following May to establish a civil service register of persons eligible for appointment to positions in the Wellsville post office, including substitute clerks and substitute carriers. The examination was held in May 1942. Plaintiff,[3] Gardner, Shine, and Fagan were among those who took the examination.
4. Plaintiff had moved to Wellsville from Ehode Island in 1941, and during the summer of 1942 was employed by an oil refinery. After the civil service examination in May 1942, plaintiff talked with the postmaster about the prospects of appointment and was told by the postmaster that he expected to appoint three substitutes. Plaintiff understood the postmaster to say or to imply that if the opportunity presented itself, he would be glad to give plaintiff one of the appointments. Thereafter, in July or August 1942, plaintiff went to Philadelphia in connection with his employment by the refinery, and was not in Wellsville (although his family was) when the results of the examination were announced.
5. The results of the examination were announced in August 1942, and the register of eligibles was formally established on the 26th of that month. Following are the names of the eligibles in the order of their listing on the register:[4]
1. Hollod, John P.
2. Gardner, James M.
3. O’Brien, Thomas H.
4. Stannard, R. Dow
5. Fagan, Francis J.
6. Spicer, John L.
7. Walker, Francis W.
8. Miinte, Louis W.
9.Reynolds, Theron W.
10. Snow, Harold G.
11. Dunham, John 0.
12. Woodworth, Raymond O.
13. Shine, Bernard J.
14. Higgins, Perry B.
15. Bartley, James L.
16. Tucker, Jr., Na.than Benton
*759 6. Within a few days plaintiff learned of the results of the examination, including the establishment of the register and the fact that he had made third place. He thereupon resigned from his position with the oil refinery and returned to Wellsville from Philadelphia, in anticipation of receiving one of the appointments.
When plaintiff conferred with the postmaster, he was informed (a) that one appointment would go to John P. Hol-lod, who was first on the list and who had veteran’s preference from service in World War I; (b) that James M. Gardner would be retained (i. e. appointed to the position of substitute clerk) ; (c) that Francis J. Fagan would receive the third appointment; and (d) that the reason for the retention of Gardner and the appointment of Fagan was that the postmaster felt obligated to them.
The appointments of Hollod and Gardner described in the preceding paragraph were duly made in September 1942. Hollod became a substitute carrier. Gardner became a substitute clerk.[5]
7. In making the appointments described in the preceding finding, the postmaster gave consideration to the names on the eligible list, at least through the name of Francis J. Fagan, who was fifth on the list. The two appointments made, as previously noted, went to the men occupying first and second places. The man holding fourth place, ft. Dow Stannard, was offered an appointment and declined it.
In this process the postmaster determined not to offer an appointment to plaintiff. The reasons therefor, as given by him, follow:
* * * O’Brien * * * had first come to Wellsville in 1941, to work at a local refinery; but his home was understood to have been in Rhode Island. He brought his wife and small daughter to live in a rented house in Wellsville, but in July 1942, * * * he left the community, and it was reported he had gone to work at a refinery * * * in Pennsylvania. Reports circulated in Wellsville to the effect that his services at the refinery had been unsatisfactory. It was not known whether he intended ever to return to Wellsville * * *.
*760 * * * I considered this in connection with the eligibility of Mr. O’Brien.
At the time of the appointment of Hollod and Gardner, no action was taken with respect to Fagan or Shine which would have had the effect of placing either of them on the classified list.
The effect, if any, of Stannard’s refusal of appointment upon his retention on or standing in the register is not established by the evidence.
8. Plaintiff was quite upset and angry over his failure to receive one of the appointments. He applied for and received unemployment compensation and engaged in some miscellaneous work, and remained in Wellsville during September, October, and November, 1942.
9. On December 1, 1942, plaintiff was employed by the Wellsville post office as a temporary substitute carrier.[6] This employment was for the Christmas rush during the month of December. It was so intended by the postmaster and so understood by plaintiff. The employment was terminated on December 31,1942.
The postmaster found plaintiff’s work during this period to be satisfactory, but also found him “belligerent, opinionated, and unpopular among other employees. * * * prone to argue * * The postmaster considered him to be a troublemaker.
10. (a) James M. Gardner entered the service of the Navy in November 1942. In filling the vacancy the postmaster again considered plaintiff, and determined not to appoint him. The vacancy was filled instead by Francis J. Fagan, who became a probational indefinite substitute clerk, effective March 8, 1943. Thereafter, plaintiff was not again considered by the postmaster for a permanent appointment.
(b) John P. Hollod entered the service of the Army in December 1942. To fill the vacancy the postmaster appointed Bernard J. Shine a temporary substitute carrier. Shine became a probational indefinite substitute carrier, effective June 1,1943.
*761 (c) Francis J. Fagan entered the service of the Navy in January 1944. To fill the vacancy the postmaster, on January 20,1944, employed plaintiff as a substitute clerk by a war service indefinite appointment.[7]
(d) In February 1944, one of the carriers entered the service of the merchant marine. To fill the vacancy B. Dow Stannard was employed as a substitute carrier by a war service indefinite appointment.[8]
11. On March 7,1944, plaintiff was ordered to report for preinduction physical examination. Ten days later (March 17) he was certified physically fit, and acceptable for service in the Navy. Anticipating the call to service early in April, plaintiff was placed on leave on March 29,1944.
12. On April 17,1944, the civil service register of eligibles described in finding 5 expired.
13. Plaintiff was inducted in the Navy on April 25, 1944. He remained on active duty in the Navy until August 20, 1945, when he was honorably discharged. At the time of his discharge he held the grade of mailman third class. He was discharged with a service connected disability rated 30 percent.
While plaintiff was serving in the the Navy, his family returned to Ehode Island. Upon his discharge he joined them there, and did not return to Wellsville.
14. By the summer of 1945 a retention register had been established in the Wellsville post office on which was carried the names of the employees then engaged in work at the post office and the names of the employees who were then on military leave. The letter “A” denoted permanent or probational status. The letter “B” denoted status less then permanent or probational, i. e., war service or temporary. The numeral “1” denoted veteran’s status. The numeral “2” denoted non-veteran status. Every employee of the post *762 office (presently at work or on military leave) was given a letter (A or B) and a numeral (1 or 2) to indicate bis place on the retention register. Following are the names, positions, and retention preference ratings of the employees of the Welisville post office on October 19,1945:[9]
Brandes, William F__. Carrier_ A-2
Dailey, D. Wellman--Clerk_ A-l
Donavan, F. A_ Carrier_ A-2
Fagan, Francis J.[10]_ Substitute Clerk_ A-l
Gardner, James M.[11]__ Substitute Clerk_ A-l
Hansen, William J_ Clerk_ A-l
Higgins, Francis_ Clerk_ A-2
Hollod, John P.[12]_ Substitute Carrier_ A-l
Magner, William [13]_ Clerk_ A — 1
Marsh, Burton F_ Clerk_ A-2
McGinnis, Connell_ Substitute Clerk (WSI)_ B-2
O’Brien, Thomas H.[14]Substitute Clerjr (WSI)_ B-l
Petrey, John B.[15]_ Carrier_ A-l
Schen, Carl O_ Carrier_ A-l
Shaughnessy, John_ Carrier_ A-2
Shine, Bernard J_ Substitute Carrier_ A-2
Stannard, R. Dow_ Substitute Carrier (WSI)__ B-2
Watson, William J_ Carrier_ A-l
Williams, W. Kenneth. Assistant Postmaster_ A-2
15. Throughout the war years the postmaster had been careful to maintain the records by the appointment of substitute clerks to fill in for regular clerks and of substitute carriers to fill in for regular carriers. The only variation from this rule was the appointment of a substitute carrier to fill the vacancy of a substitute clerk when plaintiff entered the Navy. The postmaster had not been equally strict in the assignment of duties. Substitute clerks sometimes did the *763 work of substitute carriers and vice versa. If plaintiff had been restored to duty, he could have done the work of either a substitute clerk or a substitute carrier.
16. After plaintiff’s discharge from the Navy, and sometime in the fall of 1945 (plaintiff places the date as October 19, 1945), he wrote to the postmaster informing him of his release by honorable discharge from the military service and making inquiry concerning the prospects of further employment by the Wellsville post office. This letter was not preserved by the postmaster and plaintiff kept no copy. The test of it is not in evidence.
17. Sometime between September 1 and December 1, 1945 (plaintiff says it was in October), the postmaster wrote to plaintiff in reply to the letter described in the preceding finding. The postmaster’s letter said, in pertinent part:
* * * regarding the situation here at the post office I am pretty much up a tree at the present time. John Petrey came back to work on September 1st. Jim Gardner is returning to the office on December 1st. I frankly admit that I don’t know very much about your civil service standing right now. After Pearl Harbor the commission withdrew the eligible register and we made appointments as War Service substitutes. I have written a letter to the Civil Service Commission this afternoon and as soon as I get a reply I’ll let you know. It is my understanding that after the war the register that you are on was to be restored. Every soldier was to have Iris name on that list for the same length of time that he served in the armed forces. I don’t know as to whether I am right or not about that. If it is restored then will all of you boys get five extra points as veterans or just what does happen are questions that I am trying to get the Civil Service Commission to answer. As soon as I learn some of the answers I will let you know. Of course you know * * * that I cannot guarantee a substitute anything very definite. He just has to string along and take a chance on getting enough work to make ends meet. Frank Fagan who is still in service, is the regular substitute clerk. John Hollod, still in service, is the regular substitute carrier. When they all get back there might be a place for another regular substitute but I’ll have to wait and see what happens. However, I will let you know if the eligible register is again placed in force and just where you stand. * * *
*764 18. In November 1945, plaintiff addressed a letter to tbe “Manager” of tbe Second Civil Service Eegion in New York City. Tbe letter contained tbe following caption:
Subject — Postal Clerk-Carrier Examination at Wells-vüle, N. Y. Date not exactly known but believe it was May 1942. Eating received about Sept. 1942.
The letter said, in part:
I would like a little information regarding my standing etc. on this and would appreciate if you would answer them the best you can without referring to me to the postmaster at the activity concerned. I am considered a disabled veteran now as I have been discharged from the Navy.
1. Can I have ten points added to my score as a result of this disability? If so what do I do?
2. When will appointments be made from this list?
3. Will the postmaster be able to pass me up without explaining the reason?
4. As a result of my disability I would rather accept a clerk’s job. Can it be arranged so that I can pass up a carriers appointment to accept a clerk appointment?
5. Have any permanent or substitute appointments been made from the list? I do not mean “temporary war appointments.” If so, who has been appointed and when ?
6. Where do I stand on this list? What place — 1, 2 or 3rd etc.
Please try and answer these questions and any other information that is available.
19. On January 4,1946, plaintiff called at the office of the Second Civil Service Eegion in New York City and the questions contained in his letter (set forth in the preceding finding) were discussed with him. The advice given him at that time is summarized in the letter addressed to him by the Second Civil Service Eegion, quoted in finding 21 (b). It included advice as to his right as a veteran to be restored to duty at the Wellsville post office.
20. (a) In January 1946 (presumably after his visit to the Civil Service Eegional Office), plaintiff again wrote to the postmaster. The letter is not in evidence.
(b) Sometime during the first half of February 1946, the postmaster replied to the foregoing letter, saying, in part:
*765 * * * I am going to answer your question very honestly. If you come ahead of Shine and Stannard, who are non-veterans, then you would have a good chance of eventually having a steady postal job here in Wellsville. You say that the last place you worked and you also were working when called, was here at the PO then it seems to me that the good old bill of rights, would cover you very nicely. * * * I want you to write a letter to the * * * Civil Service * * * and ask them for all the information and also as to your rights. * * * I want * * * to protect any interests that you veterans have on the civil service list. Shortly after Pearl Harbor the eligible list that you were on was withdrawn. It is my understanding that by filling in Form 14 and making application that you can have your name restored to that eligible list that was withdrawn and on which your name appeared. The boys whose names appeared on that list were given a certain number of days after being discharged to make application. However * * * none of these boys know about the conditions under which they could be restored and I think therefore that few took advantage of it. * * * Gardner is back * * *. * * * Petreyisback * * * Fagan is coming back * * * I don’t know whether you come ahead of Shine and Stannard and that is the question I want you to ask the civil service * * *.
21. (a) On February 10, 1946, plaintiff directed another letter to the Second Civil Service Kegion in which he said:
You will recall that I have written you and have been down to N. Y. C. and gone to considerable expense to try to find out where I stand. [When I talked with you (the girl in charge) you advised me that the list or register was obsolete and to consult the P. M. I have done this and am enclosing his letters to me so that you can see he wants me to have the right answers. He thinks that I will be restored if I execute form 14 which is enclosed. You did not agree. I also tried to find out if Mr. Shine and Mr. Stannard were ahead of me. You would not tell me. From his letters you can see that he wants me to know and has requested me to write you. Won’t you please give me all the information that he wants me to have as he believes you are the ones to know the answers. If you won’t give them to me please give them to him.
(b) On February 21, 1946, the Regional Director of the Second Civil Service Region replied to the foregoing letter:
*766 Reference is made to your letter * * * regarding your eligibility on the Substitute Clerk-Carrier register for the Wellsville, N. Y. Post Office.
As advised at the time you called at this office you are not eligible for restoration of eligibility on the register inasmuch as your eligibility was used for your war service indefinite substitute clerk appointment effective January 20, 1944. Furthermore had you not been appointed as a war service indefinite substitute clerk from the register, you would not be entitled to restoration of eligibility because the register expired prior to your entrance into military service. That is, you entered military service April 26, 1944 and the register expired April 17,1944.
You were also advised at that time to contact the Postmaster regarding restoration to duty as a war service indefinite substitute under War Service Regulation XIII, since you stated you were employed at that office when you entered military service. However, action must be taken by the Postmaster.
Upon restoration to duty as a war service indefinite substitute, as a veteran you would have retention rights over a nonveteran serving in a war service indefinite position should a reduction in force become necessary.
Letters submitted with your letter are returned herewith as well as Form 14 which should be sent to Postmaster with your request for restoration to duty and proof of honorable discharge.[16]
22. At the time the letter quoted in finding 20 (b) was written plaintiff had not submitted, nor did he thereafter submit, to the postmaster formal proof of his honorable discharge from the Navy.
23. On April 3,1946, plaintiff accepted a position with the Navy Department in Davisville, Rhode Island.
While plaintiff was so employed, an examination was held, on August 16, 1946, for employment in the railway mail service. Plaintiff passed the examination and on December 9, 1946, accepted an appointment as a temporary railway mail clerk. He was promoted (a) on December 30, 1946, to substitute railway mail clerk, and (b) on September 1,1947, to regular railway mail clerk. As of April 24,1953, he was a grade 5 clerk in the same service.
*767 24. (a) On March 15,1947, while plaintiff was employed as a substitute railway mail clerk, he wrote a letter to the United States Civil Service Commission. The letter is not in evidence.
(b) On April 21,1947, the President of the Civil Service Commission replied:
I have your letter of March 15,1947, concerning your desire for a salary increase within the Railway Mail Service.
Pay increases or promotions to higher positions are under the jurisdiction of the proper personnel officials of the agency concerned. * * *
Accrued annual or sick leave may not be transferred from one Government agency to another when the latter agency operates under a different leave system. * * * this circumstance precludes the possibility of transferring your sick leave from the Navy Department to the Post Office Department.
You were entitled to restoration to duty to the position of substitute clerk in the Wellsville, New York, post office if you applied for your former position within 90 days of the date of your honorable discharge from the armed forces and met the requirements for restoration. * * *
Your appointment in the Railway Mail Service on December 30, 1946 could probably have been effected by transfer but the Post Office Department evidently decided to appoint you from a register. * * *
25. (a) On August 6, 1947, plaintiff wrote a letter to the Postmaster General. The letter is not in evidence.
(b) On September 3,1947, the First Assistant Postmaster General replied:
The Postmaster General has asked me to answer your letter of August 6, 1947, relative to your desire to be accorded benefits of Public Law 577 on the basis of your service as substitute clerk at Wellsville, New York.
* * * nothing can be done in view of the statement * * * that you entered the military service on April 26,1944, and the register on which your name appeared expired April 17,1944.
* * * even though you had been in the service as a classified employee in the post office prior to June 30, 1945, you would not receive the $400 additional upon your promotion to a regular R. P. O. clerk. * * *
*768 26. (a) On November 10, 1947, plaintiff wrote a letter to the United States Civil Service Commission. The letter is not in evidence.
(b) On December 18,1947, the Executive Director of the Civil Service Commission replied:
Reply is made to your letter of November 10, 1947, relative to your eligibility for employment in the post office at Wellsville.
As you have been advised * * * you are not eligible for restoration of eligibility on the register for the post office in question inasmuch as your eligibility was used for your war service indefinite substitute clerk appointment effective January 20, 1944. Also had you not been appointed as a war service indefinite substitute clerk from the register, you would not be entitled to restoration of eligibility because the register expired prior to your entrance into the armed forces. * * *
27. (a) On February 24, 1948, the President of the Civil Service Commission wrote to a Member of the House of Representatives:
I have your letters of December 81,1947 and February 13,1948 in the interest of Mr. Thomas H. O’Brien concerning his desire for an increase in salary under Public Law 317. * * *
(b) On March 25,1948, the Director, Divisions of Personnel and Facilities, Post Office Department, replying to a letter dated March 12,1948, from plaintiff to the Postmaster General, told plaintiff:
* * * In the Railway Mail Service you are not eligible for the benefits of Public Law 317. * * *
28. On or about May 8,1948, the postmaster wrote plaintiff:
I received your letter and we will have that information for you in a couple of days. I also had a letter from your boss asking for the data * * *.
I never was able to understand why the Civil Service Commission refused to restore your rights here at this office and give you the benefits of a law that I think was 577. * * * it would have given you preference over any others that were under you on that list that was withdrawn while you were in service. Then another thing * * * they said that all boys must be restored to the last job they held * * *. This was the last place that you worked and it has always seemed to me that *769 all the boys on that list should have been restored. But the commission comes back and says that it should have been done inside of ninety days after discharge. I have never met one of those boys whose name was on the list that seemed to know anything about that ninety day stuff. * * *
29. On May 21, 1948, plaintiff wrote to the President of the Civil Service Commission:
I hope that you will not be annoyed at my persistence in trying to receive a higher grade in the Post Office Dept. I realize it is a picayune matter to you.
To me it will help a great deal toward my living expenses. I feel my claim is just and reasonable and yet I have not been able to make anyone recognize it.
I think that I am entitled to statutory restoration, but there is no doubt that I am entitled to regulatory restoration.[17] I believe that you can help me receive a higher grade in the Post Office Dept.
In your Bules and Regulations, Federal Personnel Manual, Part 10, Page 21-253, Sec. 10.109 and 10.110, you explain this thoroughly. Couldn’t you help to have me restored under these sections which would give me a position of like seniority status and pay. I meet all the requirements as listed in these sections. * * *
30. On September 3, 1948, following examination for the position of substitute clerk-carrier for the Wellsville post office, a new register was established and the Civil Service Commission ordered the displacement of all employees in retention subgroups B-l and below. Such displacement was completed as of November 30,1948. After that time, all new appointments were made from the September 1948 register.
31. Plaintiff continued until sometime in 1951 to write letters to and to receive letters from various officials in the Post Office Department, the Civil Service Commission, and the General Accounting Office. Pie persisted until he had obtained from the Civil Service Commission and from the Comptroller General specific and final denial of his claims, including formal decisions and appeals.
*770 32. The findings set forth below in subparagraphs (a) through (f) are based on inferences fairly drawn from the evidence as a whole:
(a) It is doubtful that plaintiff knew before January 4, 1946, of the nature of his right to restoration to duty in terms of retention preference as distinguished from new selections from the register.
(b) After the office of the Second Civil Service Region pointed out to plaintiff, in his interview there on January 4, 1946, the difference between restoration of the register (which he was seeking) and restoration to the job, plaintiff elected to persevere in his effort to obtain an appointment based on his place on the register in preference to restoration to the j ob.
(c) The postmaster testified that he had never understood from his communications that plaintiff was asking for restoration to the job on the basis of retention preference, but continued under the impression that what plaintiff wanted was an appointment from the register, for which it would first be necessary to have official word of the restoration of the register and of plaintiff’s place on it.
(d) While the plaintiff testified positively that he made application for restoration to his former position on October 19,1945, the postmaster testified to the contrary and to the effect that plaintiff’s entire emphasis and effort were to secure a regular appointment from the civil service register. In the absence of the text of plaintiff’s letter to the defendant we resolve the doubt and find that plaintiff applied for restoration on October 19, 1945.
(e) After plaintiff accepted an appointment in the railway mail service, he translated in his own mind his right to restoration to the job at Wellsville into a right to have, in the railway mail service, a position of status (grade), seniority, and pay equal to that which he would have had (i) if he had been restored to the job at Wellsville; (ii) if the job to which he was restored had been a classified position; (iii) if he had had normal advancement in such a classified position while so employed at Wellsville; and (iv) if he had joined the railway mail service in December 1946 by transfer from the post office at Wellsville.
*771 33. (a) On October 19,1945, plaintiff held a retention preference rating (B-l) higher than that of Connell McGinnis (B-2) or R. Dow Stannard (B-2), and possibly William Magner (see footnote 13).
(b) Connell McGinnis was displaced, and was separated from the service, on February 16, 1946, upon the return of Francis J. Fagan, who held a higher retention preference rating than plaintiff.[18]
(c) R. Dow Stannard was displaced, and was separated from the service on March 15,1946, upon the return of John P. Hollod, who held a higher retention preference rating than plaintiff.[19]
(d) William Magner retired from the service on April 30,1946.
(e) If plaintiff had been restored to the job at the Wells-ville post office, in a position of like seniority, status, and pay, to the one held by him when he entered the military service, his employment would not have extended beyond April 30, 1946, and might have been terminated on February 16,1946, or March 15,1946.
34. Counsel for the parties have stipulated that, if plaintiff is entitled as a matter of law to recover, the amount thereof will be made the subject of a stipulation after consideration of the employment plaintiff would have had if he had been restored to the job, and the amounts earned by plaintiff in other employment during such period or received by him from defendant and subject to offset.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law plaintiff is entitled to recover.
Entry of judgment is suspended pending the filing of a stipulation by the parties showing the amount due plaintiff in accordance with this opinion.

 Appointed July 1, 1935.

 Shine was employed on this occasion to fill a vacancy created when John B. Petrey, the regular substitute carrier, entered the service of the Army.

 Plaintiff is a citizen of the united States.

 The evidence is insufficient to establish the consideration or disposition of appointments relating to the men holding the positions on this list numbered 6, 7, 8, 9, 19, 11, 12, 14, 15, and 16. The facts in evidence relate to the men listed as numbers 1, 2, 3, 4, 5, and 13.

 These appointments became permanent after the men had satisfied the requirements of the probationary period.

 Tills employment was not deemed by tlie Civil Service to affect plaintiff’s status on the register. He remained on it, and in first place, after the appointments of Hollod and Gardner removed their names from it.

 The Civil Service Commission subsequently ruled (a) that plaintiff's selection for a war service appointment was taken from the register and (b) that his war service appointment had the effect of removing his name from the register, in the sense, evidently, that his eligibility was “used up” by the appointment.

 The relation, if any, of Stannard’s war service appointment to the presence or absence of his name on the register at the time the war service appointment was made is not established by the evidence. Stannard never acquired probational indefinite status, as did Fagan and Shine.

 On military leave. It was Ms vacancy the plaintiff filled.

 On military leave. His vacancy was filled by Fagan, until Fagan entered the service.

 On military leave. His vacancy was filled by Shine.

 The retention preference rating of A-l for Magner is subject to question. Magner was formerly assistant postmaster. He had accepted appointment as a clerk in January 1942, in order to serve during the war. He was past retirement age in October 1945.

 On military leave. His vacancy had been filled by Edwin Whitehill, temporary substitute carrier.

 Petrey returned to duty from military leave in September 1945'. He displaced Shine, technically, but Shine remained as the replacement for Hollod.

 October 19, 1945, is the date on which plaintiff claims his request for restoration to duty was made.

 The evidence is silent as to the nature, purpose, and content of Form 14.

 According to the Civil Service Commission, statutory restoration of veterans was provided by section 8 of the Selective Training and Service Act of 1940, while the requirements for regulatory restoration of employees who left a position to enter the military service were contained in section 10.109 of the Commission’s regulations.

 McGinnis was a substitute clerk by war service indefinite appointment.

 Stannard was a substitute carrier by war service indefinite appointment. The right, if any, of a substitute clerk to displace a substitute carrier is not developed in the record. The same is true of the right, if any, of a substitute clerk to displace a clerk, such as Magner.